SCOGGINS (BROOKE v.). See Case No. 1,-936.

SCOTIA, The. See Cases Nos. 390 and 391.

## Case No. 12,512.

### The SCOTIA.

[5 Blatchf. 227.] [1]

Circuit Court, S. D. New York. Nov. 22, 1864.

COLLISION—STEAM AND SAIL—CHANGE OF COURSE.

A sailing vessel discovering the lights of a steamer nearly ahead, on a dark and cloudy night, had no right afterwards to change her course, on the idea that she had not been seen by the steamer.

[Cited in The Free State, Case No. 5,090; McWilliams v. The Vim, 12 Fed. 909; The Alberta, 23 Fed. 811; The Allianca, 39 Fed. 479.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, by the owners of the schooner E. H. Parker, against the steamer Scotia, to recover damages for injuries sustained by the schooner, in a collision which took place between her and the Scotia, on the morning of the 20th of November, 1862, between five and six o'clock, in the lower bay of the city of New York, about a mile south of Fort Lafayette, and somewhat to the east of it. The wind was south-south-west, and the tide about three-quarters flood. The schooner was laden with a cargo of coal, and was on a voyage to New Haven, by the way of the East river and Long Island Sound. The steamer was proceeding down the bay, on one of her usual trips from the port of New York to Liverpool. The morning was dark and cloudy, but without fog or mist on the water. The district court dismissed the libel [case unreported], and the libellants appealed to this court.

Washington Q. Morton and Walter L. Livingston, for libellants.

Daniel D. Lord, for claimants.

NELSON, Circuit Justice. The case turns mainly on a question of fact, and that is, whether or not the schooner, after having been seen by the steamer, changed her course, by porting her helm and bearing to the east,

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

thereby crossing the course or track of the steamer.

It is insisted by the master and hands on board of the steamer, that, on discovering the light of the schooner, which was then some three miles distant, it bore two points on their starboard bow, and that with a view to give her a free course, the helm of the steamer was starboarded, inclining her course to the east: but, that the schooner, instead of pursuing her course, ported her helm, and brought her across the track of the steamer, and thus occasioned the collision. It is admitted by the hands on board of the schooner, that, when they discovered the lights of the steamer, she appeared on a line nearly ahead of them; and that, intending to go up the bay on the east side, and to anchor at Red Hook Flats, they ported her helm and bore to the east. But they insist that this must have taken place before the schooner could have been seen by the hands on board of the steamer, and, hence, would not have influenced the course of the steamer. This I regard as the weak point in the case of the libellants. I am not satisfied, upon the proofs, that their position is well founded. On the contrary, I am inclined to think the weight of the evidence is, that the change of course took place after the schooner was discovered by the steamer. The error committed by the schooner was in changing her course after she had discovered the steamer. She had no right to assume she had not been seen by the steamer. The rule, that a steamer must take care and avoid a sailing vessel, if she keeps her course, is equally imperative, that the latter must not change her course. If she does she is in fault, and cannot invoke the rule against the steamer.

Besides, in this case, the night was dark, the steamer was moving down the bay with moderate speed, and the hands on board appear to have been active and attentive to avoid a collision, after discovering the schooner, and to have discovered her as soon as was practicable by the most vigilant lookouts.

Even if the schooner had not been chargeable with fault, I think it difficult to impute fault to the steamer. No doubt, if the collision had occurred in open day, or even on a clear and bright night, when the steamer could have seen the change made by the sailing vessel early enough to avoid her, it would. have been her duty to take all proper measures for the purpose. But a change of course on a night dark and cloudy cannot be so readily discovered or so fully comprehended, and a less stringent rule must be applied.

I agree with the court below, that, upon the proofs in the case, the steamer was not in fault, and must affirm the decree.